# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| K.W., *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-2578 (RMC) |
| District of Columbia, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

This case culminates several years of administrative interactions and litigation between Plaintiffs, the parents of eighth-grade student K.W., and Defendant District of Columbia Public Schools (DCPS). At issue is K.W.'s Individualized Education Program, his school placement, and the process by which K.W. and his parents can vindicate his right to a free and appropriate public education, guaranteed to him by federal law, which DCPS appears to ignore. No parents should be required to sue DCPS each and every school year to force the school system to comply with its obligations under federal law. The Complaint allegations make out a shocking lack of compliance by DCPS.

DCPS has moved for partial dismissal of the Complaint, which K.W.'s parents oppose. Additionally, Plaintiffs seek immediate injunctive relief pursuant to the "stay-put" provision of the Individuals with Disabilities Education Act. Defendants oppose such relief. The Court will deny the motion to dismiss and grant injunctive relief.

### I. FACTS

K.W. is a 13-year old, eighth-grade student diagnosed with a Specific Learning Disability. He has also been diagnosed with attention-deficit hyperactivity disorder and fine

1

motor and motor-planning disorders that cause him to reverse letters, fail to differentiate accurately between left and right, and be unable to imitate multi-step motor patterns and directions.  K.W. qualifies as a child needing special education services and is entitled to a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*; *see id* § 1415(a).  K.W. attended pre-kindergarten through third grade at Brent Elementary Public School, part of DCPS.  At Brent, K.W.'s parents expressed concern about his academic progress and questioned the level of special education services being provided.  They also supplemented DCPS services at their own expense, with private interventions and tutoring at the direction of Brent Elementary staff.

At the end of his third-grade year in the spring of 2014, K.W.'s parents were dissatisfied with the Individualized Education Program (IEP) proposed for K.W. for the 2014-15 school year.  Instead, they unilaterally placed K.W. at the Lab School of Washington, a private, special education school for students with significant learning disabilities.   K.W. attended the Lab School during the 2014-15 academic year, where he received over 30 hours of specialized instruction per week across all content areas.  Midway though the school year, the Lab School additionally began to provide K.W. with a double period of reading, utilizing intensive, research-based methodologies to address his disabilities.

On March 17, 2015, K.W.'s parents filed a due process complaint challenging the appropriateness of the DCPS-proposed IEP and educational (school) placement for K.W. for the 2014-15 school year.  On June 8, 2015, Independent Hearing Officer Peter Vaden issued a Hearing Officer Determination (HOD) in which he found that the proposed 2014-15 IEP denied K.W. a FAPE (March 2015 HOD).  *See* 20 U.S.C. § 1415(a).  Hearing Officer Vaden determined that the Lab School was a beneficial placement for K.W. and ordered DCPS to reimburse K.W.'s

parents for the cost of the Lab School tuition for the 2014-15 school year. DCPS did not appeal the March 2015 HOD.

This cycle repeated itself three more times. In the summer of 2015, K.W.'s parents met with DCPS to develop an appropriate IEP for the 2015-16 school year. The DCPS team proposed an IEP that would provide K.W. with 15 hours per week of specialized instruction to be implemented at Brent. K.W.'s parents again disagreed and filed a second due process complaint on September 10, 2015. On November 23, 2015, Independent Hearing Officer Keith Seat issued an HOD finding that the 2015-16 IEP denied a FAPE to K.W. and ordering DCPS to reimburse K.W.'s parents for his beneficial placement at the Lab School for the 2015-2016 school year (November 2015 HOD). DCPS did not appeal the November 2015 HOD.

In the fall of 2016, K.W.'s parents again met with DCPS to develop an appropriate IEP for the 2016-17 school year. DCPS again proposed 15 hours of specialized instruction in a public school setting and K.W.'s parents again disagreed. K.W.'s parents filed a third due process complaint on January 3, 2017, and reached a settlement with DCPS on February 1, 2017 (February 2017 Settlement). Under the February 2017 Settlement, K.W. remained at the Lab School and DCPS paid his educational expenses as required by IDEA.

In October 2017, DCPS yet again proposed an IEP for K.W. for the 2017-18 school year that would have provided just 15 hours of specialized instruction in a public school setting. K.W.'s parents again disagreed and filed a due process complaint on December 8, 2017. On March 27, 2018, Independent Hearing Officer Michael Lazan determined that DCPS had denied a FAPE to K.W. by proposing a 15-hour-per-week IEP in his local public school (March 2018 HOD). Again, the March 2018 HOD ordered DCPS to reimburse K.W.'s parents for his

beneficial placement at the Lab School for the 2017-18 school year. DCPS did not appeal the March 2018 HOD.

On March 30, 2018, DCPS contacted K.W.'s parents to obtain documentation on K.W.'s education-related expenses. K.W.'s parents provided the requested documentation on May 3, 2018, and DCPS confirmed receipt. As of the filing of the instant Complaint on November 8, 2018, DCPS had not complied with the March 2018 HOD or fully reimbursed K.W.'s parents for his educational expenses for the 2017-2018 school year.

During the summer of 2018, K.W.'s parents met with DCPS to develop an IEP for the 2018-19 school year. Several members of the IEP team from DCPS were the same persons who had proposed the previous two IEPs that had been found to deny K.W. a FAPE. Nonetheless, the DCPS team again proposed only 15 hours of specialized instruction per week for K.W. in a public-school setting, *i.e.*, 3 hours per day, with the rest of each day to be spent in general education without support. As relevant here, the Complaint alleges that the DCPS-proposed IEP for K.W. for the 2018-19 school year was functionally identical to the DCPS-proposed IEP for K.W. for the 2017-18 school year that Hearing Officer Lazan had already found to be a denial of FAPE in the March 2018 HOD. The DCPS-proposed 2018-19 IEP for K.W. was also highly similar to the DCPS-proposed IEP for K.W. for the 2015-16 school year, also found to be a denial of FAPE (November 2015 HOD), and the DCPS-proposed IEP for K.W. for the 2016-17 school year that was resolved through the 2017 Settlement and resulted in K.W. remaining in his placement at the Lab School.

On November 8, 2018, K.W.'s parents filed the instant Complaint, alleging the denial of a FAPE for K.W. and violations of his civil rights by both DCPS and the Office of the State Superintendent of Education of the District of Columbia (OSSE). *See* Compl. [Dkt. 1]. On

December 19, 2018, Defendants filed a motion for partial dismissal of the Complaint, including dismissal of Plaintiffs' claims as to Mayor Muriel Bowser, Interim Chancellor Amanda Alexander, and Superintendent Hansuel Kang in their official capacities. Plaintiffs oppose dismissal.[1]

Plaintiffs filed a motion for stay-put relief on January 8, 2019, seeking a court order requiring DCPS to pay for K.W. at the Lab School of Washington, effective immediately and through the pendency of this litigation, and to reimburse K.W.'s parents for money already spent for K.W.'s tuition and transportation for the 2018-19 school year to date. Defendants oppose, asserting that Plaintiffs' argument for stay-put relief fails because Plaintiffs have no cause of action to enforce a favorable Hearing Officer Determination and because Plaintiffs have not exhausted their administrative remedies regarding the 2018-19 IEP.[2]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to be sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint

---

[1] *See* Defs.' Mot. for Partial Dismissal of the Compl. (MTD) [Dkt. 6]; Pl.'s Response in Opp'n to Defs.' Mot. for Partial Dismissal of the Compl. (MTD Opp'n) [Dkt. 10]; Defs.' Resp. to Pl.'s Opp'n to Defs.' Mot. for Partial Dismissal of the Compl. (MTD Reply) [Dkt. 12].

[2] *See* Mot. for Inj. Relief Pursuant to the 'Stay-Put' Provision of the Individuals with Disabilities Education Act (Stay-Put Mot.) [Dkt. 9]; Mem. of P. & A. in Supp. of Pl.'s Mot. for Inj. Relief Pursuant to the 'Stay-Put' Provision of the Individuals with Disabilities Education Act (Stay-Put Mem.) [Dkt. 9-1]; Ex. 3, Stay-Put Mem., Hearing Officer Determination [Dkt. 9-3]; Ex. 4, Stay-Put Mot., Amended 2018-19 IEP [Dkt. 9-4]; Ex. 5, Stay-Put Mot., 2018-19 IEP Team Mtg. Notes [Dkt. 9-5]; Defs.' Opp'n to Pl.'s Mot. for Inj. Relief Pursuant to the "Stay-Put" Provision of the Individuals with Disabilities Education Act (Stay-Put Opp'n) [Dkt. 13]; Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Inj. Relief Pursuant to the "Stay-Put" Provision of the Individuals with Disabilities Education Act (Stay-Put Reply) [Dkt. 14].

need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Id*. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. A court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

**B. IDEA**

"The Individuals with Disabilities Education Act (IDEA or Act) offers States federal funds to assist in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cty. School Dist. RE-1*, 137 S. Ct. 988 (2017) (citing 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq.*). Under IDEA, a state receiving funds must provide a FAPE to all eligible children. 20 U.S.C. § 1412(a)(1); *see also Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C. Cir. 2015) ("Every child with a disability in this country is entitled to a 'free appropriate public education,' or FAPE.") (citation omitted). Children determined eligible for special education services under the Act receive an IEP, which provides the blueprint for the special education and

related services to be provided in each year or part thereof, which must be "tailored to the unique needs" of each eligible child and updated regularly. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 181 (1982) (To qualify under IDEA, states must have in effect "a policy that assures all handicapped children the right to a 'free appropriate public education,' which policy must be tailored to the unique needs of the handicapped child by means of an . . . IEP."); *see also Henry v. District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (citation omitted).

This District Court recently noted that Congress was "aware that schools had all too often denied [children with disabilities] appropriate educations without in any way consulting their parents, [so that] Congress repeatedly emphasized throughout [IDEA] the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Middleton v. District of Columbia*, No. 17-88, 2018 WL 2582591, at *2 (D.D.C. June 4, 2018) (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)). IDEA establishes procedures that provide parents with "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311.

### C. Stay-Put Relief Under IDEA

IDEA includes a specific stay-put provision which states:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

7

In evaluating requests for injunctive relief under the stay-put provision, the traditional four-part test for a preliminary injunction does not apply. *See Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1023-24 (D.C. Cir. 1989) (noting that "if the [stay-put] provision applies, injunctive relief is available without the traditional showing of irreparable harm"). Rather, the party requesting relief under the stay-put provision must show that (1) proceedings under the IDEA are pending; and (2) prevention of a change in the "then-current educational placement" of the child is sought. *See* 20 U.S.C. § 1415(j); *Moore v. District of Columbia*, No. 09-656, 2009 WL 1097489 (D.D.C. Apr. 22, 2009). Upon meeting both prongs of the inquiry, the movant is presumptively entitled to a stay-put injunction in favor of the child's current placement, unless the school district overcomes the presumption by demonstrating "that application of the traditional four part preliminary injunction test warrants a different result." *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 99 (D.D.C. 2006); *see also Honig*, 484 U.S. at 328 (finding the stay-put provision "effectively creates a presumption in favor of the child's current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others").

### III. ANALYSIS

The Complaint alleges three counts: Count I: DCPS violated K.W.'s civil rights by its failure to pay tuition reimbursement for the 2017-18 school year; Count II: DCPS denied K.W. a FAPE for the 2018-19 school year by offering in bad faith the same IEP previously found to be a denial of FAPE; and Count III: OSSE violated K.W.'s civil rights by failing to ensure that DCPS complied with the requirements of IDEA. Additionally, Plaintiff has moved this Court for a "stay-put" Order. The motion for stay-put relief necessitates an analysis of the legitimacy of the underlying IDEA claims.

8

## A. Count I: Failure to Comply with HOD as Civil Rights Violation

Plaintiffs assert that DCPS' failure to comply with the March 27, 2018 Hearing Officer Determination violates K.W.'s civil rights. Specifically, Plaintiffs allege that DCPS has not reimbursed them for K.W.'s educational expenses for the 2017-18 school year. Defendants respond that Count One effectively seeks enforcement of the March 27, 2018 HOD, which this Court does not have jurisdiction to review because "IDEA does not create a private right of action to challenge a school district's *implementation* of a HOD." MTD at 12 (emphasis in original).

The IDEA statute provides that, following a due process hearing, "[a]ny party aggrieved by the findings and decisions made under subsections (f) and (k) who does not have a right to appeal under subsection (g) and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section . . . ." 20 U.S.C. § 1415(i)(2)(A). In *B.D. v. District of Columbia*, the D.C. Circuit held that "section 1415(i)(2)(A) provides no enforcement cause of action," because that section's "plain text refers not simply to an 'aggrieved' party, but to one aggrieved 'by the findings and decision' of a hearing officer." *B.D. v. District of Columbia*, 817 F.3d 792, 801 (D.C. Cir. 2016). "One who wins before a hearing officer is not 'aggrieved' by the hearing officer's decision." *Id*. at 801. Plaintiffs therefore cannot contend that they are aggrieved by the findings or decision of the HOD, so § 1415(i)(2)(A) cannot provide the relief they seek.

As the D.C. Circuit further noted in *B.D.*, some courts have accepted the argument that 42 U.S.C. § 1983 provides a mechanism for plaintiffs to enforce a favorable HOD in federal court when a school system fails to implement the relief ordered. *B.D.*, 817 F.3d at 802. *B.D.* did not examine more closely the issue of a remedy under § 1983, as the plaintiffs in that case

9

had forfeited the argument. Not so here: K.W.'s parents address the issue in detail. MTD Opp'n at 13-15.

As relevant here, section 1983 provides a civil cause of action against any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Section 1983 is "a generally and presumptively available remedy for claimed violations of federal law," *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994), and, as indicated, it has been recognized as a viable cause of action for a school system's failure to comply with an HOD. *See Porter v. Bd. of Trs. of Manhattan Beach Unified School Dist.*, 307 F. 3d 1064 (9th Cir. 2002); *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987); *see also B.D.*, 817 F.3d at 802 (recognizing that section 1983 might provide a viable enforcement mechanism for favorable HODs).

IDEA requires the District of Columbia to create administrative procedures for deciding parental due process complaints brought under the statute. 20 U.S.C. § 1415(a)-(d). An HOD that is not appealed constitutes a final administrative order. *Id*. § 1415(e)(1). Federal and state courts may review adverse administrative orders. *Id*. § 1415(e)(2). The statute is silent, as to the enforcement of final administrative orders. However, it is indisputable that IDEA required implementation of the March 2018 HOD concerning K.W. DCPS was required either to comply or appeal; it did neither and thereby waived its right to complain. It left itself with no choice but timely compliance. *Robinson v. Pinderhughes*, 810 F.2d 1270, 1274 (4th Cir. 1987) (finding that the requirements of IDEA "can only be fairly construed to contemplate that once a final favorable administrative decision has been gained by a plaintiff, the State will carry out that

decision although it may have opposed the position of the plaintiff in the administrative proceedings"). The Complaint alleges DCPS has not complied with the March 2018 HOD because it failed to reimburse K.W.'s parents for the full amount of K.W.'s educational expenses for the 2017-18 academic year.

Defendants respond that OSSE is the proper arbiter of such a dispute. OSSE's "Procedures for Complaints Regarding Special Education" provide that "[a] complaint alleging that a public agency in Part B matters, or a public agency or private service provider in Part C matters, has failed to implement a special education due process hearing officer decision resolving a due process hearing request will be reviewed and resolved by the SCO [State Compliance Office]."[3] While this is certainly an option Plaintiffs may pursue, the Court is not convinced it is their only option.

The Ninth Circuit examined the use of § 1983 to enforce favorable IDEA HODs in *Porter*. In that case, plaintiffs sued under § 1983 and IDEA to enforce an HOD that the local education agency refused to implement.[4] *Porter*, 307 F.3d at 1071-72. The local education agency argued that the "plaintiffs' effort to enforce the decision of the state administrative proceeding must be exhausted through the state's CRP [complaint resolution procedure], which had the authority to order compliance with the due process order." *Id*. This process was in addition to the "carefully designed" exhaustion scheme set out in IDEA. *Id*. However, the Ninth

---

[3] Office of the State Superintendent of Education, Dist. of Columbia Formal State Complaint Policy & Procedures (revised Nov. 2009), https://osse.dc.gov/sites/default/files/dc/sites/osse/publication/attachments/State%20Complaints%20Policy%20and%20Procedure.pdf (last accessed Apr. 12, 2019).

[4] Only Plaintiffs' § 1983 claim is relevant here because, as discussed *supra*, the D.C. Circuit has held that IDEA—specifically § 1415(i)(2)(A)—cannot be used to enforce an HOD. *B.D.*, 817 F.3d at 792.

11

Circuit noted that the IDEA had been amended in 1997 and, "[d]espite the holdings of the Second and Third Circuits that complainants need not exhaust a state's CRP before suit to enforce IDEA rights, including in a suit to enforce a due process hearing order, Congress did not include a CRP exhaustion requirement in these subsequent amendments." *Id*. at 1072; *see also Mrs. W.*, 832 F.2d at 758 ("Significantly, § 1415(f) does not specify, directly or by incorporating its legislative history, exhaustion of possible CRP remedies."); *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 274 (3rd Cir. 1996) ("[T]he text of [the CRP regulations], and the various statements made in the Federal Register as they took their present shape, both evince an expectation that invocation of the complaint procedures they establish will be elective, not mandatory.").

Nothing in the regulations issued by the federal Department of Education (DoEd) and cited by Defendant necessitates a different result. The cited regulation was enacted pursuant to IDEA and cannot amend IDEA to require additional exhaustion beyond that contemplated by the statute. *See* 34 C.F.R. 300.152(c); *see generally* 20 U.S.C. § 1415. The statute is more generous: in its discussion of procedural safeguards, including due process hearing requirements, the statute provides, "[n]othing in this paragraph shall be construed to affect the right of a parent to file a complaint with the State educational agency." 20 U.S.C. § 1415(f)(3)(F). This language indicates that State complaint resolution procedures are voluntary, not mandatory. In promulgating its Final Rule on this issue, DoEd clearly contemplated parallel systems, rather than a single process whereby State appellate procedures must be exhausted before taking advantage of federal relief under the federal IDEA: "We believe a strong State complaint system provides parents and other individuals an opportunity to resolve disputes early without having to file a due process complaint and without having to go to a due process

hearing." 71 Fed. Reg. 46550-01, 2006 WL 2332118, at *46600 (Aug. 14, 2006). Such a "strong State complaint system" would *precede* an HOD and its enforcement in federal court under § 1983.

Finally, this is not a case of K.W.'s parents attempting to "skirt the administrative remedies provided for in the IDEA simply by adding a claim for monetary relief." *Douglas v. District of Columbia*, 65 F. Supp. 3d 225 (D.D.C. 2014). To the contrary, K.W.'s parents engaged with the DCPS administrative process for the 2017-18 school year, received the favorable March 2018 HOD, and now seek DCPS compliance. K.W.'s parents are not an "aggrieved party" because of the March 2018 HOD. 20 U.S.C. § 1415(e)(1). As was the Ninth Circuit, this Court is persuaded that the congressional decision not to require exhaustion of additional State complaint procedures when amending the IDEA renders those procedures an available, but not mandatory, alternative to litigation. This conclusion is buttressed by the legislative history of IDEA and the comments to DoEd regulations. This Court concludes that Plaintiffs were not required to engage in OSSE's collateral process before filing the immediate § 1983 claim for enforcement of the favorable March 2018 HOD decision. *See also Mrs. W.*, 832 F.2d 748; *Jeremy H. by Hunter*, 95 F.3d at 274; *Porter*, 307 F.3d 1064.

DCPS replies that it has finally "[s]ubstantially [r]eimbursed" K.W.'s parents their costs for K.W.'s education in 2017-18, so that Plaintiffs' § 1983 claim should be found moot as a matter of judicial prudence. MTD Reply at 9-10. DCPS has been too coy by half and the Court cannot agree that it can so decide. Rather, the Court accepts the facts pled in the Complaint as true and will deny Defendants' motion to dismiss Count I.[5]

---

[5] While DCPS states that it does not move to dismiss Count I, it argues that the Court should find Count I moot as a matter of judicial prudence. *See* MTD Reply at 3, 9-10.

### B. Count II: Denial of a FAPE for 2018-19 School Year

Plaintiffs assert that DCPS denied K.W. a FAPE for the 2018-19 school year when it failed to provide K.W. with an appropriate IEP and instead offered K.W. precisely the same IEP services that a Hearing Officer had already found to deny him a FAPE in the March 2018 HOD. Defendant responds that Plaintiffs have not exhausted their administrative remedies as to the 2018 IEP by seeking a due process hearing and therefore "Plaintiffs should not be permitted to seek this Court's intervention." MTD at 8.

Plaintiffs did not file a due process complaint challenging the 2018-19 IEP proposed by DCPS, and therefore have not exhausted their administrative remedies. Administrative exhaustion is typically required in IDEA cases as a prerequisite to filing a complaint in federal court. *See Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 45 (D.D.C. 2016) ("'[A] party must pursue all administrative avenues of redress' under the IDEA before seeking judicial review." (quoting *Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989))). This exhaustion requirement applies "not only to claims brought directly under the IDEA itself, but to any claims for relief available under the IDEA, regardless of their statutory basis." *Douglas v. District of Columbia*, 65 F. Supp. 3d 225, 228 (D.D.C. 2014) (quoting 20 U.S.C. § 1415(l)). Failure to exhaust may be excused upon a showing of futility or inadequacy of the administrative process. *Id*. at 228. These exceptions to the exhaustion requirement, however, are to be narrowly construed and are found "only in the most exceptional circumstances." *Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 61 (D.D.C. 2010) (citing *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 432 (D.C. Cir. 1994)).

The Complaint alleges, which the Court credits at this stage and DCPS does not deny, that DCPS proposed an IEP for K.W. for the 2018-19 school year that was identical to the 2017-18 IEP in relevant part, which a Hearing Officer had found to deny K.W. a FAPE in March

2018. Compl. ¶¶ 22-24 (addressing the March 2018 HOD).  In both IEPs, DCPS proposed only 15 hours of specialized instruction per week, with the rest of K.W.'s educational hours spent in a general education setting.  The 2016-17 IEP also proposed only 15 hours of specialized instruction per week and was resolved by a settlement under which K.W. remained at the Lab School.  Similarly, the 2015-16 IEP proposed only 15 hours of specialized instruction per week and was found by Hearing Officer Seat to deny K.W. a FAPE.  Compl. ¶ 16.

Futility presents a high bar at law and is not a finding a court makes lightly. Requiring pre-litigation administrative exhaustion "prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process."  *Cox*, 878 F.2d at 419.  These principles are critical but not relevant here.  There is no doubt that Plaintiffs have shown the futility of continuing to joust annually with DCPS, which continually attempts to flaunt its legal obligations with impunity.

One assumes, with faint hope, that DCPS will comply with a court Order. Assuming that it does, the futility of requiring administrative exhaustion for the 2018-19 IEP will not interrupt the administrative process improperly.  It is only the obduracy of DCPS that makes Plaintiffs' claims administratively futile.  Further, on the facts alleged, it is difficult to foresee how DCPS could rely on alleged "specialized expertise" or that it deserves the opportunity to correct its errors.  DCPS has failed to provide a FAPE to K.W. for four consecutive school years, as demonstrated by consistent HODs (despite different Hearing Officers) and one voluntary settlement (after which DCPS retreated to its prior denials of a FAPE).  The series of proposed

15

IEPs reflects no scintilla of effort by DCPS to correct its own mistakes; instead, DCPS appears to have compounded them. Finally, this is not a case of Plaintiffs attempting to undermine the administrative process deliberately. To the contrary, K.W.'s parents have dutifully engaged in the process for four years, each time hoping to resolve the issue with DCPS and obtain a free and appropriate public education for their child to which he is legally entitled. Each time, DCPS proposed an IEP that did not respect K.W.'s rights under law. *See Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986) ("Resort to the administrative process is *futile* if the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter."). These actions indicate an unyielding position held by DCPS, in the face of clear findings to the contrary by multiple different Hearing Officers. The Court finds that exhaustion of the 2018-19 FAPE claim would be futile. The District's motion to dismiss will be denied as to Count II.

### C. Count III: OSSE Oversight Failure as Civil Rights Violation

Plaintiffs allege that OSSE, as the State Education Agency under IDEA, 20 U.S.C. § 1415(a), has an obligation to enforce the provision of a free appropriate public education to DCPS students, and that its failure to do so "creates a loophole that DCPS intentionally exploits for the purpose of denying parents of disabled children with access to the Ordered remedy." Compl. ¶ 44. However, Plaintiffs do not allege in the Complaint that they have engaged with OSSE or its process.[6] While Plaintiffs may not be required to engage in this OSSE process before seeking relief against DCPS under Section 1983, they do not allege that the OSSE process itself is futile. Although a complaint does not need to contain detailed factual

---

[6] Office of the State Superintendent of Education, Dist. of Columbia Formal State Complaint Policy & Procedures (revised Nov. 2009).

allegations, the information provided "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs here provide only the bare legal conclusion that OSSE "effectively interfere[s] with access to the civil rights of disabled students such as K.W. and his parents." Compl. ¶ 43. These allegations, without more, are not sufficient to state a facially plausible claim for relief. *See Ashcroft* 556 U.S. at 678. Count III will be dismissed.

### D. Claims Against Defendants Alexander, Bowser, and Kang

Defendants assert that Plaintiffs' claims against Mayor Bowser, Interim Chancellor Alexander, and Superintendent Kang in their official capacities should be dismissed as redundant because the District of Columbia is also a named party. Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). The D.C. Circuit has explained that "[a] section 1983 suit for damages against municipal officials in their official capacities . . . is equivalent to a suit against the municipality itself." *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). Plaintiffs may be eligible for damages under section 1983, but, as stated above, section 1983 claims against individuals in their official capacities are equivalent to claims against the government entity itself; in this case, the claims against the District of Columbia suffice. *Id.* at 424.

However, Plaintiffs seek more than compensatory damages—specifically injunctive and declaratory relief—in contrast to the cases cited by Defendants. *See id*; *Robinson v. District of Columbia*, 403 F. Supp. 2d 39 (D.D.C. 2005). "Plaintiffs who seek injunctive relief may name the individual members of the Board as parties and may also name other public officials as parties, provided that the claim for injunctive relief is properly directed at those Board members or officers." *Tschanneral v. District of Columbia Bd. of Educ.*, 594 F. Supp.

407, 409 (D.D.C. 1984); *Fletcher v. Dist. of Columbia*, 481 F. Supp. 2d 156 (D.D.C. 2007), *amended on other grounds*, 550 F. Supp. 2d 30 (D.D.C. 2008). K.W.'s parents seek a free appropriate public education for their child, as is his right under law. The law is not an annual test of parents' resolve but, rather, a *legal obligation imposed by the federal government* that DCPS has consistently ignored and attempted to sidestep. To the extent K.W.'s parents are seeking injunctive relief against individuals in their capacities as public officials, they may proceed. The District's motion to dismiss the Complaint as to individual defendants in their official capacities will be denied.

### E. Stay-Put Relief

In addition, Plaintiffs have moved for stay-put relief under IDEA. To obtain relief under the statute's stay-put provision, Plaintiffs must show that (1) proceedings under the IDEA are pending; and (2) prevention of a change in the "then-current educational placement" of the child is sought. *See* 20 U.S.C. § 1415(j); *Moore*, 2009 WL 1097489. To satisfy the latter requirement, a student or his parent need only show that the school system "proposes a 'fundamental change in, or elimination of, a basic element of the [then-current educational placement].'" *Douglas v. District of Columbia*, 4 F. Supp. 3d 1, 2-3 (D.D.C. 2013) (citing *District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 83 (D.D.C. 2012) (alteration in original)); *see also Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). Courts have interpreted the stay-put provision as an automatic injunction, akin to the automatic stay in bankruptcy proceedings. *See Vinyard*, 901 F. Supp. 2d at 83 (collecting cases).

Defendants argue that stay-put relief should be denied because Plaintiffs have no cause of action to enforce a favorable HOD; Plaintiffs' suit was initiated outside the 90-day period imposed by § 1415(i)(2)(B); and Plaintiffs have not exhausted their administrative remedies with respect to the 2018-19 proposed IEP. As discussed above, the Court finds that

18

§ 1983 provides Plaintiffs with a cause of action to enforce the March 2018 HOD. Because Plaintiffs may seek relief under § 1983, the 90-day time limitation of § 1415(i)(2)(B) does not apply. The Court has also determined that Plaintiffs may proceed on their claim regarding the 2018-19 proposed IEP despite their failure to exhaust administrative remedies because they have shown that doing so would be futile.

Plaintiffs have asserted, and this Court agrees, that their claims satisfy the pending IDEA proceedings requirement for stay-put relief. K.W.'s 2018-19 IEP proposes that he be moved from a private, special education school (the Lab School) to a public school, where most of his instruction would occur in a general education setting despite his repeatedly proven special needs. *See Douglas*, 4 F. Supp. 3d at 3 (finding proposal of a new high school sufficient for stay-put order). It is clear beyond cavil that DCPS has yet *again* proposed a massive change to K.W.'s current educational placement by proposing yet *again* that he be placed in a public school with only 15 hours per week of specialized education and not remain at the Lab School. K.W.'s parents can clearly and obviously invoke the stay-put provision. The Court will grant Plaintiffs' request for stay-relief and order Defendants to maintain K.W.'s placement at the Lab School and to reimburse K.W.'s parents for all educational and education-related transportation expenses during the pendency of this case, including any appeals and/or remands.

## IV. CONCLUSION

Defendants' Motion for Partial Dismissal of the Complaint, Dkt. 6, will be granted in part and denied in part. The Court will deny the motion to dismiss as to Counts I and II and will grant the motion to dismiss as to Count III. The Court will deny Defendants' motion to dismiss the individuals named as defendants in their official capacities. Further, the Court will grant Plaintiffs' request for stay-put relief and order Defendant to maintain K.W. in his current educational placement at the Lab School—to include full reimbursement of K.W.'s family for all

19

education and education-related transportation expenses—during the pendency of the instant litigation, including any appeals and/or remands.

Date: May 7, 2019

ROSEMARY M. COLLYER
United States District Judge